Bromwell, J.
The prayer of the petition, in this case it that the city auditor, the city treasurer, and the board of trustees, commissioners of water works, be perpetually enjoined from doing any act under authority of ordinances Nos. 289 and 290, passed December 30, 1907. The title of the first of these ordinances is “An Ordinance, No. 289, to issue bonds for the purpose of constructing, improving and extending the new water works of the City of Cincinnati,” and the title of the second ordinance is “An Ordinance, No. 290, to provide for the proper crediting and disbursement of the fund arising from the sale of bonds of the City of Cincinnati under an ordinance entitled ‘An Ordinance, No. 289, to issue bonds, ’ ’ ’ etc.
The authority of the council to pass these two ordinances is the sole question at issue.
The petition, among other things, recites that the board of trustees, commissioners of water works, “was created by and obtained its specific powers from an act of the General Assembly of the State of Ohio, found in 92 O. L., 606, and by and from an amendatory act relating to the powers of said board of trustees, *259 commissioners of water works, found in 95 O. L., 821, and 97 O. L., 620; that said original act and the acts amendatory thereto do not specifically contain any authority for the expenditure by said board of trustees * * *' of money' raised by the issuance of bonds in the method or manner prescribed or at-' tempted to be authorized by said ordinances.”
It then alleges that the new water works referred to in said ordinance Ño. 289 have,' in so far as they are finished, been constructed particularly under the authority of said acts of the Legislature (92 O. L., 606; 95 O. L., 821, and 97 O. L., 620), and entirely under the control and 'direction of said board of trustees; that said water works have not yet been fully paid for; that the funds arising from the sale of the bonds authorized by the acts referred to are not and will not be sufficient either to pay the obligations already incurred under existing contracts nor to pay for additional work necessary to complete said water works, and that the object of the two ordinances referred to was to apply the money that should be realized by the sale of bonds authorized by ordinance No. 289 to the purpose of paying the balances due and further expenditures in the completion of said water works. Also that council has no authority to provide that the proceeds of any bonds shall be credited to or disbursed by said board of trustees and that all acts under said ordinances would be an abuse of the corporate powers of the city, would involve misapplication of its funds, and be a violation of law.
The answer of the defendants admit all of the allegations of the petition to be true, except those which set up the illegality of the action proposed to be taken by the various defendants under said ordinances and the lack of authority of council to pass the same. The answer then proceeds to set out certain explanations which seem to be immaterial but which, in the absence of a motion- to strike out, will be permitted to remain, a part of the answer, and then proceeds to state certain facts which it alleges shows the necessity' of an additional considerable amount of money oyer and above the amount realized from the sale of the bonds heretofore issued and that $250,000 will be required for that purpose in the near future. The answer alleges that because of this necessity council passed the ordinances *260 referred to; that these outstanding obligations are valid and subsisting, and that the city is liable thereon; and that there are no other resources of the city available for their payment. The answer further states that unless said obligations are paid at maturity, and in accordance with the terms of the respective contracts entered .into, a great injury to the credit of the city will be done and impairment of the water works system caused by delay in its completion; and pecuniary loss by reason of litigation, interest and claims for damages, will result and will prevent or obstruct the city in the making of other contracts which are necessary to complete the work. ,
While much of this answer is probably subject to the criticism that it is immaterial and redundant, yet upon the demurrer to the answer filed in this case we shall disregard these technical informalities and proceed to consider the single question as to whether said ordinances are valid and within the scope of the authority of the council to pass them.
The original act under authority of which the new water works of the city of Cincinnati are being constructed was passed April 24, 1896 (92 O. L., 606), entitled “An Act to provide for water works purposes in cities of the first grade of the first class. ’ ’
It authorized an expenditure of $6,500,000 for the purposes named in the act.
This act was amended and supplemented by the act passed April 25, 1902 (95 O. L., 821), which supplementary act merely provided for an increase of $2,000,000 in addition to the amount authorized to be expended under the original act.
A further amendatory and supplemental act was-passed April 23, 1904 (97 O. L,. 620), which authorized a further expenditure of $1,500,000. Under the original act and these two supplementary acts there was therefore provided authority to expend $10,000,000 for the purposes set out in the original act.
From the allegations in the answer it appears that bonds to this full amount have been issued and disposed of and the proceeds turned into the city treasury, together with an additional amount realized from other sources, making a total of $10,-415,709.77; the contract obligations amount to $10,719,644.99, *261 showing an excess of $303,935.22 over ancl above the amount realized from the sources above named. The validity of the original water works act, with the. exception .of Section 8 (which was declared invalid), was sustained by the Supreme Court in the ease of Alter v. The City, 56 O. S.; 47.
Lest there should be any cpiestion as-to. the effect of the adoption of the municipal code, which did not in terms re-enact said water works act, the Legislature, October 22, 1902, passed an act (96 O. L., 88, Section 215; found in Bates Statutes, Section 1536-914), which provides that .“nothing in this act shall be construed to alter, repeal or amend an act entitled ‘An act to create a board of supervision in the erection simultaneously of public, municipal and county buildings, ’ passed May 6, 1902, or Sections 2435-1 to 2435-18, all inclusive, of the Revised Statutes of Ohio (these being sections which cover the original water works act referred to), nor any other acts or parts of acts authorizing public improvements or the enlargement or extension of water works in any municipality by a board of water works trustees heretofore established by law, having authority to make enlargements and extensions of. uater works and having such enlargements and extensions in progress of construction; but in all such cases said board of supervision * * * or commissioners of water works or boards of water works trustees shall continue in office and perform all of the functions and duties and exercise all of the powers now possessed by them until the completion of said improvements in progress of construction, and thereupon the work so completed shall be turned over to the appropriate authorities of the municipality.” , ,
It will be noted that by the section last quoted it is specifically provided not only that said water works act shall be kept alive and in force, but that said commissioners of water works, or board of water works trustees, shall continue in office ancl perform all of the functions ancl duties and exercise all of the powers notv possessed by them until the completion of such improvements in progress of construction.
Even if said board of water works trustees shall expend all of the moneys placed at their disposal and the improvement in progress of construction shall not have been completed, they *262 would not become funclus officio although the progress of the work might be retarded or 'entirely stopped from the lack of funds with which to carry it on.
A brief analysis of this original act for the construction of Cincinnati’s new water works may assist in reaching a conclusion upon the questions involved in this case.
Section 1 provides for the creation of a commission, its composition and method in which vacancies in the board are to be filled.
Section 2 relates to the bonds to be given by said commissioners for the performance of their- duties, prohibits said comissioners from being interested in contracts entered into under the provisions of the act and provides for their removal for misfeasance, malfeasance or nonfeasance.
Section 3 provides that one of the commissioners may be also a member of the board of administration, fixes his compensation and defines his duties.
Section 4 provides for the organization of the board and its procedure.
Section 5 authorizes said commissioners to consider and adopt plans and specifications already made or cause new ones to be prepared and adopted, “for an enlargement, extension, improvement or addition to existing water works, either within or without the limit's of the city or state, including reservoirs; buildings, tunnels, pumping engines and machinery uf all kinds, pipes, and other fixtures, appliances or facilities, as, in their opinion, are necessary to secure an abundant supply of pure and wholesome water” and may' determine the location of the plant.
Section 6 authorizes the board to secure by purchase or condemnation all real and personal property and franchises necessary for the construction of the improvement and for this purpose exercise generally the power of eminent domain; no concurrent action of any board or officers will be necessary, but all powers vested in'such board or officers with respect to such proceedings’ may be exercised by said commissioners.
Section 7, authorizes the board to make contracts and employ such superintendents, engineers and other employes and fix their compensation; that they shall spend no money until after having *263 been authorized and upon proper vouchers; shall before entering into any contracts cause careful estimates of cost to be made; that all contracts shall be in writing, but such contracts may be altered or modified in the manner provided for and in case of dispute in regard to contracts that the same shall be settled by arbitration; makes void any contract that is contrary to the provisions of this act; requires advertisement for bids in daily papers; prescribes the method of securing the use of any patented material, process or device'; prescribes the manner in which bids shall be received and opened and the sureties thereon and requires that contracts shall be let to the lowest and best bidders and the method of re-letting in ease any contractor fails or refuses to proceed.-.
Section 9 provides' that all expenditures incurred before the issue and sale of bonds shall be paid out of the water works fund of the city upon vouchers and the repayment of such advances to the water works fund out of the proceeds of the sale of bonds when effected.
Section 10 authorizes the commissioners to borrow, from time to time, as the money may be needed, an amount not to exceed $6,500,000 and to issue bonds for it. . As security for said bonds a lien is created upon the water-.works property and upon the net income of the water works,- and said bonds are further secured by a pledge of the faith and credit of the city.
.Section 11 provides for the creation of a “water works im-. provement fund,” of which fund said commissioners shall be the sole trustees and shall have full control and disbursment of the same and prescribes the manner in which warrants shall be drawn upon the auditor for payments out of said fund.
Section 12 provides that — “Whenever the water works or the enlargement, extension, improvement or addition to existing water works are completed, as contemplated under Section 7 of this act, control of the same shall be surrendered by said commissioners to the board having charge of the water supply of such city.” It then further provides for the surrender of portions of the improvement as completed.
Section 13 provides for the sale of property which is not required or needed for the purposes of the act. *264 Section. 14 provides that upon completion of the improvement the terms of office of the commissioners and the employment of the employes shall cease; unexpended funds, if any, be placed in the sinking fund; the control of the water works vest in the board having charge of the water supply. It further provides that “the board having charge of such water works shall not thereafter be permitted to create any debt or liability for any of the purposes for which they are authorized to assess water rent, including all obligations incurred under the provisions of this act, that can not be met and paid from the income of the ,water works department for that year; and all debts created in violation of this provision shall be absolutely void; nor shall the board of legislation create any debt or borrow any money for the use of the water works of such cities.”
Section 15 provides for the manner in which interest on the bonds shall be paid, providing that the board having charge of the water supply may be permitted to assume the payment of such interest pending the construction of the work, out of the revenues of the water department and requiring the payment of interest on bonds issued after the completion of the work and after control has been surrendered to said board having charge of the water supply.
Section 16 provides for the creation of a sinking fund for the final redemption of the bonds authorized under this act-out of the net revenue of such water works.
Section 17 exempts the individual members of said commissioners, board of water works trustees, from individual liability on the contracts, claims or defaults.
On the same day that the act to which we have just referred was passed by the Legislature, an act entitled “An act to prescribe the purposes for which water rents may be assessed and collected in cities of the first grade of the first class” (92 O. L., 605), was passed. This law was also sustained by the Supreme Court in the case of Alter v. The City, 56 O. S., 47. It provides, among other things—
“That in cities of the first grade of the first class * - * * to provide for paying the expenses of making all betterments, enlargements and improvements of the works, including the *265 building of machinery, buildings, tanks, towers, reservoirs or any other water works appliances or the repair of the same or of the extension of the works and reservoirs or any additions thereto, or of the laying, extending or enlarging of the water mains;
“And to provide for the payment of the interest of any loan heretofore or hereafter made for the * * * construction, improvement, betterment, enlargement or extension of any part of the water works system of such city;
“Or for the creation ofea sinking fund for the liquidation of the debt heretofore or hereafter made for any of these purposes;
“And to provide for the payment of the interest and the creation of a sinking fund for the payment of bonds heretofore or hereafter issued for water works purposes;
“And to provide for the payment of any land, turnpike, highway or franchise of any description, or any easement or interest in any of the same which may be necessary at any time for the purpose of extending, enlarging or improving the water works or making additions thereto;
‘ ‘ The board having charge of the water works of such city shall have the power to assess and collect, from time to time, a water rent of sufficient amount.”
These two acts, called the water works act and the water rent act, passed simultaneously, and in the same proceeding before the Supreme Court declared unconstitutional, should be construed together; and, so construed, a liberal interpretation given for the purpose of making effective their principal object, viz., the construction of a new water works system for the city of Cincinnati which should be adequate, not only for the present needs of the city but for a number of years to come, would perhaps authorize us in finding that the board having charge of tfie water supply of the city of Cincinnati, viz., the board of public service, would be_ authorized to pay out of the water rents any indebtedness legitimately incurred by the trustees of the water works in connection with the construction of the new water works system, provided any surplus was available in the receipts from said water rents after compliance with the provisions of Section 16 of the water works act, requiring the payments to the sinking fund for the payment of the interest and ultimately of the indebtedness created by the sale of the bonds, and we *266 think that the right of the board of public service to apply such surplus revenue in reduction of the obligations of the board of trustees, water works commissioners, could not be questioned. At any rate, under the provisions of Section 15 of the act, the board of public service can assume the payment of interest on outstanding bonds during the construction of the work.
But whether this water rent law would permit the application of revenues received.from water rent to the payment of indebtedness incurred by the board of trustees, water works commissioners, in the construction of the new water works system is not involved in the questions presented in this case, and is not material to our determination of it. It is not so much a question as to whether relief may be given to the board of trustees, commissioners of water works, through some other agency, as it is whether council has the authority to furnish the relief needed by the passage of the two ordinances whose validity is attacked in this proceeding.
The first supplementary act, which provided for borrowing an additional $2,000,000, was passed April 25, 1902. Pour days afterwards, April 29, 1902, the so-called Longworth act was passed. The supplementary act is found in 95 O. L., 821, and the Longworth act in 95 O. L., 318. It is apparent, then, that the Legislature had both of these acts under consideration at the same time, and that the Longworth act, with full knowledge on the part of the Legislature as to the provisions of the original water works act and of this first supplementary act, was not intended to except from its operation or to withhold from the city of Cincinnati any of the general provisions of said Long-worth act. In'Other words, it would be a fair construction to be placed upon that act that any of the powers in regard to the issue of bonds and the creation of indebtedness should be cumulative to the provisions contained in the original water works act' and that neither was exclusive of the other.
It is a well-understood rule of interpretation that When courts are called upon to construe statutes in pari materia such a construction should be given as will permit, if possible, both to stand, and we think this rule of construction should be applied in this case.
*267 The Longworth act (95 O. L., 318, Sections 2835 to 2837, inclusive, Bates’ Statutes), provides, among other things: ,
“That the council of any municipal corporation of the state of Ohio shall have the power to issue and sell bonds in such amounts and denominations, for such period of time and at such rate of interest, not exceeding six per cent, and in such manner as is provided by law for the sale of bonds by such # * * municipal corporation, for any of the purposes provided for in this act, whenever such * * * council, by an affirmative vote of not less than two-thirds of the members elected * * * thereto shall, by resolution or ordinance, deem the same necessary.
“2. For extending, enlarging, improving, repairing or securing a more complete enjoyment of any building or improvement authorized by this section and for equipping and furnishing the same.
“11. For erecting or purchasing water works and supplying water to the township or corporation and the inhabitants thereof.”
The act fixes a limitation of the amount-of bonds that may be issued in any one fiscal year so that the total bonded indebtedness for that year, under the authority of this act, shall not exceed one per cent, of the total value of all property in such municipal corporation, as listed and assessed for taxation, except as otherwise provided in the act. It provides further that when the council by vote of two-thirds of its members shall deem it necessary in any one fieal year, as shown by resolution or ordinance, to issue bonds for any of the purposes in said act in any amount greater than one per cent, of the total value of all property in such municipal corporation, they shall submit the question of issuing bonds in excess of said one per cent, to a vote of the electors of said corporation. It provides further that the net indebtedness incurred by any municipal corporation after the passage of this act for the purposes enumerated therein should not exceed four per cent, of the total value of such property, unless an excess of such amount is ordered by vote of the electors of the corporation, and further provides that upon a vote of such electors the amount of the net indebtedness created and incurred shall not, in any case, exceed eight per cent, of the total value of such property.
*268 Section 28356 provides;
“That the limitations of one per cent, and four per cent, prescribed in Section 2835 shall not be construed as affecting bonds issued for the purpose of constructing, improving and extending water works when the income from such water works is sufficient to cover the cost of all operating expenses, interest charges and to pass a sufficient amount to a sinking fund to retire such bonds when they become due, nor any bonds issued prior to the passage of Section 2835, Revised Statutes, as ¿mended April 29, 1902.”
There is no question raised in this case as to the regularity of the proceedings of council in the passage of the two ordinances, nor is any claim made that the issue of bonds will be beyond the limitations prescribed in the Longworth act, so that the only question is whether'the Longworth act could apply to and authorize council to provide for the issue of the bonds for the purposes set forth in the ordinances.
It is well settled that municipal corporations, being creatures of the state, have no inherent powers except such as are expressly granted by the Legislature, or are reasonably necessary for the purpose of carrying into effect powers expressly granted, and the courts have construed this principle very strictly.
Sutherland on Statutory Construction, Section 551, uses the language:
“A municipal corporation has only such powers as are expressly conferred or necessarily, implied. Doubts as to the existence of power are resoived against the corporation. * * As municipal corporations are vested with a portion of the authority which properly appertains to the sovereign power of the state they must be confined to those powers which are clearly granted, as it is only by such grants that the government proper can delegate its just authority.” See, also, Cooley Constitutional Limitations, page 211; Dillon on Municipal Corporations, Sections 90 and 91.
Our own Supreme Court in many eases has sustained this view. It is not necessary to cite cases at length, but the following, taken from the ease of Collins v. Hatch, 18 O., 523, is a fair sample of the many decisions upon the subject of the limitation of municipal power. On page 524 the court says:
*269 “In determining the powers of municipal corporations it is right and proper to allow them the exercise of all powers expressly granted, and such others as may be necessary, to carry the powers expressly granted into execution. Beyond this the court ought not to go, and should there be error in construing these powers, it is better to err in restricting than in extending.”
But it will be noticed that even in the cases from our own Supreme Court reports, and the opinions of the text-book writers, municipal corporations are .not limited .to the express powers delegated to them by the Legislature, but are granted such implied powers as may be reasonably necessary to carry out those expressly granted.
We are of the opinion that, even under the rule of strict construction as applied to the provisions of the Longworth act, and in spite of the argument ably presented by the solicitor that the water works act is a special act, created for a particular purpose, to be administered by a particular board and in a particular manner, and is therefore exclusive of the general statutes authorizing the construction of water works and the borrowing of money for that purpose, as the Longworth act was passed sub sequent to the water works act and no limitation or exclusion of the general law contained in the Longworth act'was made applicable to.the water works act, the council would be lawfully authorized to pass the ordinances referred to and order that the proceeds of the sale of the bonds should be placed at the disposal of the board of trustees, commissioners of water works, for expenditure in the completion of the work yet to be done and of the obligations already contracted.
The principal object -of the water works act was the building of the water works. The grant of power to issue and sell bonds was secondary thereto. The Legislature has already authorized extensions of $1,500,000 and $2,000,000 in the amounts to be expended for that purpose. It has, by the Longworth act, given general authority to make additional expenditures .within reasonable limits as provided in that act. The absolute necessity that chis improvement should be completed, not only for the purpose of making available the large expenditure already made, but also *270 protection to the health and safety of the people of Cincinnati, are sufficient considerations to warrant such a construction of the law as will permit the improvement to be completed at the earliest possible moment.
Edward M. Ballard, City Solicitor, for plaintiff.
Ellis G. Kinkead and Jonas B. Frenkel, contra.
While the fact that the additional amounts thought necessary in addition to the original amount .of $6,500,000 to complete this work were secured through the medium of acts of the Legislature, no proper inference can be drawn that this is the only method by which the amount now necessary for that purpose can be secured. That method is but one, and is not to the exclusion of any other, method that may be authorized by l#w. We think such other method is the one pursued in this case through the municipal ordinances which council has passed referred to in the pleadings.
We therefore find such ordinances valid and overrule the demurrer to the answer.